## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH PRYER,                          )
                                       )
       Defendant/Petitioner       )
                                       )    Criminal Action No. 05-15-SLR
   v.                            )    Civil Action No. 07-46-SLR
                                       )
UNITED STATES OF AMERICA,              )
        Respondent            )

### UNITED STATES' RESPONSE TO
### PETITIONER'S 28 U.S.C. § 2255 MOTION

NOW COMES the United States, by and through its undersigned attorneys, and hereby responds to the defendant's Section 2255 Petition. For the reasons set forth below, the motion is without merit and should be denied without an evidentiary hearing.

#### Timeliness

The Defendant's Section 2255 Petition is timely, as it was filed on January 24, 2007, which is within one year of the judgment in the criminal case, which was entered on February 2, 2006. *See* Judgment, Exhibit 3, *attached.*

#### Procedural Background

On March 10, 2005, the federal grand jury for the District of Delaware returned a five-count Indictment charging the defendant with drug and gun offenses. *See* Indictment, Exhibit 1, *attached.* On July 7, 2007, the defendant pleaded guilty to Counts One and Four of the Indictment. *See* Plea Agreement, Exhibit 2, *attached.* Count One charged the defendant with possession with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

1

Count Four charged the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

A pre-sentence investigation report was prepared, and the defendant's total offense level was set at 34, based on the drug weight admitted by the defendant in his memorandum of plea agreement, and during the plea colloquy. Given a criminal history category of VI, the United States Sentencing Guidelines recommended a sentence of 262 to 327 months of imprisonment, with a ten-year mandatory minimum sentence. *See* Sentencing Transcript at 4, Exhibit 5, *attached*. On January 19, 2006, the defendant was sentenced below the guidelines range to 216 months of imprisonment, to be followed by five years of supervised release. *Id.* at 17. The final judgment was entered on February 2, 2006. *See* Judgment.

## Issues Raised

The petitioner seeks relief on three grounds. First, the petitioner alleges that his counsel was ineffective for failing to (1) raise jurisdictional defects in the Indictment; (2) explain that the drug amounts needed to be proven beyond a reasonable doubt; (3) object to the court's calculation of the drug amount at sentencing; and (4) file a timely notice of appeal. Second, the petitioner claims he is entitled to relief based on the application of the advisory guidelines prior to the Supreme Court's decision in *United States v. Booker.* And third, the petitioner claims that the term of supervised release constituted double jeopardy and was unauthorized by statute.

**Argument**

I.      **Ineffective Assistance Claims**

      A.      *Legal Background*

To establish a claim for relief based on ineffective assistance of counsel, a petitioner must demonstrate: (1) that his attorney's performance was deficient, *i.e.*, unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance. *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (citing *Strickland v. Washington*, 466 U.S. 668, 687(1984)). Under the deficiency prong, "[j]udicial scrutiny . . . is highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Under the prejudice prong, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Third Circuit has generally endorsed consideration of the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005).

      B.      *Petitioner's Claims of Ineffective Assistance are Without Merit*

1. Petitioner's contention (Pet. 5(c)) that his counsel was ineffective for failing to raise or advise him of potential jurisdictional defects in the Indictment is frivolous. Petitioner was validly indicted on federal drug and gun charges in the District of Delaware and the Indictment suffered from no constitutional or jurisdictional defects. Therefore, counsel's alleged failure to raise or advise him of jurisdictional questions fails both the deficiency and the prejudice prongs of the *Strickland* analysis.

3

2. Petitioner next asserts (Pet. 5(c)-5(d)) that his counsel was ineffective for failing to advise him that the drug quantities were an essential element of the crimes charged or that the drug quantities triggered the "more severe penalties under Section 841(b)(1)(A)." Petitioner claims that "if he had been so informed, he would not have pleaded guilty to possession of more than 50 grams of cocaine base."

This claim fails, considering that the plea agreement, signed by the defendant, specifies that possession of more than 50 grams of cocaine base is an element of the offense. The plea agreement reads, "[t]he defendant understands that if there were a trial, the government would have to prove the following elements with respect to Count One of the Indictment: (1) that on or about February 17, 2005, the defendant knowingly possessed more than 50 grams of crack cocaine, i.e., crack cocaine . . ." Plea Agreement at 2. Moreover, at the change of plea hearing, this Court specifically advised the defendant of his right to have each element of the offense proven to a jury beyond a reasonable doubt, stating:

> Do you understand that if this case were to go to trial it would be the Government' burden to prove all of the essential elements of these offenses beyond a reasonable doubt to a jury. That means that if there were a trial that the Government would have to prove the following elements beyond a reasonable doubt with respect to Count One of the Indictment.
>
> First, that on or about February 17, 2005, [the defendant] knowingly possessed 50 grams or more of cocaine base, i.e., crack cocaine . . . .

Plea Colloquy Transcript ["Plea Tr."], at 15, Exhibit 4. Both the plea agreement and this Court advised the defendant that a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), charged in Count One of the Indictment, "carries a maximum sentence of lifetime imprisonment with a mandatory minimum term [of] imprisonment of ten years." Plea Agreement at 1; Plea Tr. at 4.

The defendant expressly indicated that he had reviewed the indictment, the written charges, and had "fully discuss[ed] those charges and the case in general" with his attorney, and represented at

4

the time of his change of plea hearing, that he was "fully satisfied with counsel['s] representation and advice." Plea Tr. at 3-4. Considering this record, the defendant cannot claim that his attorney failed to properly advise him of the elements of the offense, or that he was prejudiced by such a failure.

3. The petitioner further contends (Pet. 5(d)-5(e)) that his counsel was ineffective for failing to object to the drug quantity at sentencing. The defendant, however, admitted in the memorandum of plea agreement, and during the change of plea colloquy, that he possessed, "among other things, 362 grams of cocaine base, i.e., crack cocaine," that he knew that it was crack cocaine, that he had dominion and control over it, and that he intended to distribute it. Plea Agreement at 2. This Court asked the defendant during the change of plea hearing whether he was "in agreement with the amount of crack cocaine," specified in the plea agreement, and the defendant responded, "yes." Plea Tr. 17. The defendant also responded that he did not disagree with the Government's factual representation of the defendant's offense conduct, which specified that the defendant possessed 305 grams of cocaine hydrochloride, 362 grams of cocaine base, and 1225 grams of marijuana. Plea. Tr. 19-20. As the defendant expressly admitted to the drug weight, his counsel surely was not ineffective for failing to challenge that weight at sentencing.

4. Petitioner lastly asserts (Pet. 5(e)) that his counsel's failure to file a timely notice of appeal was "*per se* ineffectiveness." However, in assessing a counsel's performance in failing to file a direct appeal, the Supreme Court has expressly rejected a *per se* rule, "as inconsistent with Strickland's holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000).

The Supreme Court established a three part inquiry, asking first "whether counsel . . . consulted with the defendant about an appeal." *Id.* The Court has held that, "[i]f counsel has consulted with the

5

defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

Petitioner does not allege that his counsel failed to consult with him regarding his appellate rights nor does he claim that he instructed his counsel to file a direct appeal. Moreover, as the attached affidavit from defense counsel indicates, counsel did consult with the defendant before the change of plea hearing and before sentencing regarding his appeal options. See Kousoulis Affidavit, Exhibit 6. Defense counsel has no record or recollection of the defendant directing her to file an appeal in this matter.[1]  *Id.*  Given these facts, and that lack of valid issues for appeal, counsel was not ineffective for failing to pursue and appeal in this matter.

## II.     *Booker* **Claim**

The petitioner next contends (Pet. 5(f)) that he was "sentenced on January 19, 2006, under the unconstitutionally severed and excised advisory application of the United States Sentencing

_____

[1]Even if counsel had failed to consult with the defendant about an appeal, it still would not have constituted ineffective assistance of counsel. Rather, counsel has "a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

Because the defendant pleaded guilty, admitted the relevant drugs weights, and was ultimately sentenced significantly below the guideline range, there were no reasonable grounds for appeal. A rational defendant, therefore, would not have sought to appeal a substantially below-guidelines sentence. Furthermore, petitioner gave no reasonable indication that he would nevertheless want to appeal. *See* Kousoulis Affidavit.

Guidelines." To the extent that this contention raises claims under *United States v. Booker*, 125 S.Ct. 738 (2005), it must fail since *Booker*'s holding is not retroactive, and therefore provides no basis for collateral review. *See United States v. Lloyd*, 407 F.3d 608, 616 (3d Cir. 2005). At any rate, the defendant was sentenced post-*Booker* under the advisory guidelines system, and indeed, received a sentenced substantially *below* the advisory Guidelines range. *See* Sent. Tr. 16-17.

To the extent that the defendant is challenging the *Booker* decision itself as unconstitutional, that claim is frivolous on its face and should be denied.

**III.    Supervise Release Claim**

Finally, petitioner challenges the imposition of a five year term of supervised release as double jeopardy and as unauthorized by statute. This claim is without merit. A term of supervised release is expressly authorized by 18 U.S.C. § 3583(a), and does not implicate double jeopardy concerns. *See United States v. Dees*, 467 F.3d 847, 853-54 (3d Cir. 2006) (finding no double jeopardy concerns even in cases of multiple supervised release revocations).


WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court dismiss the petition without an evidentiary hearing.


Respectfully submitted,

COLM F. CONNOLLY
United States Attorney


Ilana H. Eisenstein
Assistant United States Attorney

Dated:    May 18, 2007

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH PRYER                          )
                                      )
        Defendant/Petitioner          )
                                      )
        v.                            )        Criminal Act. No. 05-15-SLR
                                      )        Civil Action No. 07-46-SLR
UNITED STATES OF AMERICA              )
                                      )
        Respondent.                   )

## CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on May 18, 2007, I electronically filed:

## United States' Response to
## Petitioner's 28 U.S.C. §2255 Motion

by causing two (2) copies of said document to be delivered via U.S. Mail to Petitioner/Defendant of record at the following address:

Joseph M. Pryer
04947-015
F.C.I. Skhuylkill
P.O. Box 759
Minersville, Pa. 17954-0759

                                  /s/Jennifer Brown
                                    Jennifer Brown

**APPENDIX**

**TABLE OF GOVERNMENT EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Indictment, March 10, 2005 |
| 2 | Plea Agreement, July 7, 2005 |
| 3 | Judgment, February 2, 2006 |
| 4 | Plea Colloquy Transcript, July 7, 2005 |
| 5 | Sentencing Transcript, January 19, 2006 |
| 6 | Kousoulis Affidavit, May 17, 2007. |

# EXHIBIT 1

REDACTED

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**FILED**

**Mar 10  12 56 PM '05**

CLERK
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Criminal Action No. 05- 15 |
| | : | |
| JOSEPH M. PRYER, | : | |
| | : | |
| Defendant. | : | |

## INDICTMENT

The Federal Grand Jury for the District of Delaware charges that:

### COUNT I

On or about February 17, 2005, in the District of Delaware, JOSEPH M. PRYER, defendant herein, did knowingly possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

### COUNT II

On or about February 17, 2005, in the District of Delaware, JOSEPH M. PRYER, defendant herein, did knowingly possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT III

On or about February 17, 2005, in the District of Delaware, JOSEPH M. PRYER, defendant herein, did knowingly possess with the intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

## COUNT IV

On or about February 17, 2005, in the District of Delaware, the defendant, JOSEPH M. PRYER, defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit, (a) a conviction on or about April 16, 2001, in the Superior Court for the State of Delaware, of one count of Robbery Second Degree, in violation of 11 Del. C. § 831; and (b) a conviction on or about October 20, 1997, in the Superior Court for the State of Delaware, of one count of Assault Second Degree, in violation of 11 Del. C. § 612; did knowingly possess in and affecting commerce a firearm, to wit, a Smith and Wesson model 629-3 .44 caliber handgun, serial number BNN4019, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT V

On or about February 17, 2005, in the District of Delaware, the defendant, JOSEPH M. PRYER, defendant herein, in furtherance of his possession with the intent to deliver cocaine, cocaine base, and marijuana, as charged in Counts I through III of this Indictment, all of the foregoing being drug trafficking crimes for which he may be prosecuted in a court of the United States, did knowingly possess a firearm, to wit, a Smith and Wesson model 629-3 .44 caliber handgun, serial number BNN4019, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and (D).

## NOTICE OF FORFEITURE

Upon conviction of any of the controlled substance offenses alleged in Counts I through III of this Indictment, the defendant, JOSEPH M. PRYER, shall forfeit to the United States pursuant to 21 U.S.C. § 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations.

If any forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

_____
Foreperson

COLM F. CONNOLLY
United States Attorney

BY: _____
Keith M. Rosen
Assistant United States Attorney

Dated: March 10, 2005

# EXHIBIT 2

*Filed in*
*open court*
*AMT 7/7/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,              )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Criminal Action No. 05-15-SLR
                                        )
JOSEPH M. PRYER                         )
                                        )
                Defendant.              )

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorneys,

Colm F. Connolly, United States Attorney for the District of Delaware, and Anne Y. Park, Assistant

United States Attorney for the District of Delaware, and the defendant, Joseph M. Pryer, by and

through his attorney, Eleni Kousoulis, Esquire, the following agreement is hereby entered into by

the respective parties:

1. The defendant shall plead guilty in the United States District Court for the District

of Delaware to Counts One and Four of the Indictment.  Count One charges the defendant with

possession with the intent to distribute 50 grams or more of cocaine base, in violation of Title 21,

United States Code, Section 841(a)(1) and (b)(1)(A), which carries a maximum sentence of lifetime

imprisonment, with a mandatory minimum term of imprisonment of ten years, a fine of $4,000,000,

lifetime supervised release, with a mandatory minimum term of supervised release of five years, and

a $100 special assessment.  Count Four charges the defendant with possession of a firearm after

conviction of a felony, in violation of 18 U.S.C. § 922(g)(1), which carries a maximum sentence of

a term of imprisonment of ten years, a fine of $250,000, three years of supervised release, and a $100 special assessment. .

2. At the time of sentencing, the United States agrees to move to dismiss the remaining counts of the Indictment.

3. The defendant understands that if there were a trial, the government would have to prove the following elements with respect to Count One of the Indictment: (1) that on or about February 17, 2005, the defendant knowingly possessed 50 grams or more of cocaine base, i.e., crack cocaine; (2) that the substance was in fact cocaine base, i.e., crack cocaine; and (3) that the defendant intended to distribute the cocaine base, i.e., crack cocaine. With respect to Count ~~Three~~ Four of the Indictment, the government would have to prove the following elements: (1) that on or about February 17, 2005, the defendant knowingly possessed a firearm; (2) that at the time he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; and (3) that the firearm affected interstate commerce, that is, that it had previously crossed state lines.

4. The defendant admits the following facts. On or about February 17, 2005, the police recovered, among other things, 362 grams of cocaine base, i.e., crack cocaine, and a Smith and Wesson, model 629-3, .44 caliber handgun, serial number BNN4019, from the defendant's car, a Mazda Millenia with temporary Pennsylvania registration number 0827-920, which was parked in the driveway of his residence at 3081 New Castle Avenue in New Castle, Delaware. The defendant knew that there was cocaine base, i.e., crack cocaine, in his car; he had dominion and control over this cocaine base, i.e., crack cocaine; and he intended to distribute this cocaine base, i.e., crack cocaine. The defendant further knew that the Smith & Wesson .44 caliber firearm was in his car and he had dominion and control over this firearm. The defendant was

2

convicted of Robbery in the Second Degree, a felony crime punishable by imprisonment for a

term exceeding one year, in New Castle County Superior Court on or about April 16, 2001, and

Assault in the Second Degree, a felony crime punishable by imprisonment for a term exceeding

one year, in New Castle County Superior Court on or about October 20, 1997. The Smith &

Wesson .44 caliber firearm was manufactured outside the State of Delaware.

5.     The defendant abandons any right, title, and interest that he may have in the Smith

and Wesson, model 629-3, .44 caliber handgun, serial number BNN4019, the firearm having

been seized by the Delaware State Police on or about February 17, 2005; agrees to execute all

documents requested by the government to effect his abandonment; and agrees that the Delaware

State Police and/or the Bureau of Alcohol, Tobacco, Firearms and Explosives may dispose of the

firearm in whatever manner it deems appropriate.

6.     The defendant agrees to forfeit all interests in any drug related asset that the

defendant currently owns, has previously owned or over which the defendant currently, or has in

the past, exercised control, directly or indirectly, and any property the defendant has transferred,

as well as any property that is traceable to, derived from, fungible with, or a substitute for

property that constitutes the proceeds of his offense, including but not limited to the following

specific property: a 1997 Cadillac Seville with temporary DE registration number XB 075529,

VIN # 1G6KS52Y5VU806681; and a Smith and Wesson, model 629-3, .44 caliber handgun,

serial number BNN4019. The defendant warrants that he is the sole owner of the property listed

above, and agrees to hold the United States, its agents and employees harmless from any claims

whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

3

7.    The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

8.    The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct and/or property facilitating illegal conduct.

9.    Provided that the United States Attorney does not subsequently learn of conduct by the defendant inconsistent with acceptance of responsibility, the United States agrees to a two-level reduction under USSG § 3E1.1(a), and if the defendant's offense level is determined to be level 16 or greater, the United States agrees to an additional 1 level reduction under USSG §

3E1.1(b) based on the defendant's conduct to date, and will so move the District Court at sentencing.

10. The United States further agrees to recommend a sentence at the bottom end of the guideline range.

11. The defendant understands that at sentencing the District Court must consider the United States Sentencing Guidelines and take them into account in exercising its discretion to determine the appropriate sentence and must also consider the other factors bearing on an appropriate sentence pursuant to 18 U.S.C. § 3553(a). The defendant further understands, as stated above, that the government will recommend that the Court impose a sentence at the bottom end of the sentencing range set forth by the Sentencing Guidelines. The defendant recognizes that the Court is not bound by any stipulations or recommendations of the parties. The defendant agrees that he will not be allowed to withdraw his guilty plea because the Court calculates the guidelines differently than he expects, or contrary to any stipulation of the parties or recommendation of his attorney.

12. The defendant agrees to pay the $200 special assessment on the day of sentencing. Should he fail to do so, the defendant agrees to voluntarily enter the United States Bureau of Prisons' administered program known as the Inmate Financial Responsibility Program through which the Bureau of Prisons will collect a portion of defendant's prison salary and apply it on defendant's behalf to the payment of the outstanding debt ordered.

13. The United States Attorney reserves the right to defend any ruling of the District Court should there be an appeal from this case.

14.    It is further agreed by the undersigned parties that this Memorandum supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in writing signed by all the parties; and, that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever.


COLM F. CONNOLLY
United States Attorney

_Eleni Kousoulis_                          By: _Anne Y. Park_

Eleni Kousoulis, Esquire                   Anne Y. Park
Attorney for Defendant                     Assistant United States Attorney


_Joseph M. Pryer_

Joseph M. Pryer
Defendant


Dated: 7-7-05


AND NOW, this 7th day of July, 2005, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.


_Sue L. Robinson_

HONORABLE SUE L. ROBINSON
Chief Judge, United States District Court
for the District of Delaware


6

# EXHIBIT 3

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
                Sheet 1

# UNITED STATES DISTRICT COURT
## District of Delaware

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | |
| JOSEPH M. PRYER | Case Number: 1:05-CR-015-001-SLR |
| | USM Number: 04947-015 |
| | Eleni Kousoulis, Esquire |
| | Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s)    I and IV of the indictment.

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:841(a)(1) | Possession with the intent to distribute more than 50 grams of cocaine base | 02/17/2005 | I |
| 18:922(g)(1) | Possession of a firearm by person prohibited | 02/17/2005 | IV |
| | | | |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count(s)    II, III, and V of the indictment    ☐ is    ☒ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

01/19/2006
Date of Imposition of Judgment

_____
Signature of Judge

The Honorable Sue L. Robinson, Chief U.S. District Judge-Delaware
Name and Title of Judge

_____
Date    February 2, 2006

AO 245B    (Rev. 12/03) Judgment in Criminal Case
           Sheet 2 Imprisonment

DEFENDANT: JOSEPH M. PRYER                                    Judgment Page  2    of  6
CASE NUMBER: 1:05-CR-015-001-SLR

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of: 216 months for count I and

     120 months for count IV, such terms to be served concurrently.

☒  The court makes the following recommendations to the Bureau of Prisons:

    That the defendant be placed in a facility close to family in Delaware.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m.  ☐ p.m.   on  _____

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on  _____

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

    Defendant delivered on  _____  to  _____

a_____ , with a certified copy of this judgment.


                                              _____
                                                    UNITED STATES MARSHAL

                                         By  _____
                                                  DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
            Sheet 3 Supervised Release

---

**DEFENDANT:** JOSEPH M. PRYER
**CASE NUMBER:** 1:05-CR-015-001-SLR

Judgment Page  3  of  6

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years, consisting of a term of

60 months for count I and a term of 36 months for count IV, such terms to run concurrently.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.
The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon. (Check, if applicable.)

☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 12/03) Judgment in a Criminal Case
            Sheet 3C - Supervised Release

DEFENDANT: JOSEPH M. PRYER                                    Judgment Page  4    of  6
CASE NUMBER: 1:05-CR-015-001-SLR

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in a drug aftercare treatment program, at the direction of the probation officer, which may include testing.

2. The defendant shall participate in a mental health treatment program, which may include counseling for anger management, at the direction of the probation officer.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
             Sheet 5 Criminal Monetary Penalties

DEFENDANT: JOSEPH M. PRYER                        Judgment Page  5   of  6
CASE NUMBER: 1:05-CR-015-001-SLR

## CRIMINAL MONETARY PENALTIES

    The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $waived | $ n/a |

☐  The determination of restitution is deferred until _____ .  An *Amended Judgment in a Criminal Case* (AO 245C) will be entered
     after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in
     the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid
     before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

**TOTALS**                $ _____    $_____

☐  Restitution amount ordered pursuant to plea agreement $_____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the
     fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject
     to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐  the interest requirement is waived for the  ☐ fine  ☐ restitution.

     ☐  the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or
after September 13, 1994, but before April 23, 1996.

AO 245B     (Rev. 12/03) Judgment in a Criminal Case
            Sheet 6 Schedule of Payments

Judgment Page  6  of  6

**DEFENDANT:** JOSEPH M. PRYER
**CASE NUMBER:** 1:05-CR-015-001-SLR

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☒  Lump sum payment of $ 200.00 _____ due immediately, balance due

      ☐  not later than _____ ,or
      ☒  in accordance     ☐ C,   ☐ D,   ☐ E, or   ☒ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

  —  ☒ Special Assessment shall be made payable to Clerk, U.S. District Court.
  —  ☐ Criminal monetary payments, with the exception of restitution and those payments made through the Federal Bureau of
      Prisons' Inmate Financial Responsibility Program, shall be made payable to Clerk, U.S. District Court. Any restitution
      ordered is to be made payable to the victim, and collected by the U.S. Probation Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# EXHIBIT 4

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
                                 )
                                 )  Criminal Action
   v.                            )  No. 05-15-SLR
                                 )
                                 )
                                 )
JOSEPH PRYER,                    )
                                 )
            Defendant.           )


                United States District Court
                866 King Street - Sixth Floor
                Wilmington, Delaware


                Thursday, July 7, 2005
                10:35 a.m.


BEFORE:  THE HONORABLE SUE L. ROBINSON
         United States District Judge


APPEARANCES:

            ANNE PARK, ESQ.
            for the United States


            ELENI KOUSOULIS, ESQ.
            for the Defendant

1              MS. PARK:   Good morning, Your

2    Honor.   The Court has set aside this time for a

3    change of plea hearing in United States versus

4    Joseph M. Pryer.   Criminal action number 05-15.   I

5    have the executed agreement if I may approach the

6    Court?

7              THE COURT:   Yes, thank you very

8    much.   And Ms. Kousoulis and Mr. Pryer, if you

9    would come forward.   And Mr. Pryer, it is my

10   responsibility to make sure that if you enter a

11   plea of guilty that you do so voluntarily and that

12   you do so knowing the consequences as best we can

13   know today.

14             Today I am going to ask you a series

15   of questions.   I am going to ask you to take an

16   oath and to answer those questions truthfully.

17   And I tell you now if you answer any of the

18   questions falsely, give false answers, may later

19   be used against you in another prosecution for

20   perjury.   Do you understand all of that?

21             THE WITNESS:   Yes.

22             THE COURT:   And would you please

23   administer the oath.

24                  JOSEPH PRYER,

1                    the deponent herein, having first

2                    been duly sworn on oath, was

3                    examined and testified as follows:

4                  THE COURT:  Mr. Pryer, would you

5    please state your full name for the record?

6                  THE WITNESS:   Joseph M. Pryer.

7                  THE COURT:  How old are you today?

8                  THE WITNESS:   Twenty-seven.

9                  THE COURT:  How far did you get in

10   your formal education?

11                 THE WITNESS:   Tenth grade.

12                 THE COURT:   Have you ever been

13   treated for any mental illness or addiction to

14   narcotic drugs of any kind?

15                 THE WITNESS:   No, ma'am.

16                 THE COURT:  And are you presently

17   under the influence of any drug or medication or

18   alcohol of any kind?

19                 THE WITNESS:  No, ma'am.

20                 THE COURT:  Have you had the

21   opportunity to review the indictment pending

22   against you, that is the written charges made

23   against you in this case as well as fully

24   discussing those charges and the case in general

1    with your attorney Ms. Kousoulis?

2                    THE WITNESS:    Yes.

3                    THE COURT:    And are you fully

4    satisfied with counsel representation and the

5    advice given to in this case by Ms. Kousoulis as

6    your attorney?

7                    THE WITNESS:    Yes.

8                    THE COURT:    I'm going to briefly go

9    over the memorandum plea agreement.    Paragraph one

10   indicates that you are pleading guilty to Counts

11   One and Four of the indictment.    Count One charges

12   you with possession with the intent to distribute

13   50 grams or more of cocaine base.    A violation of

14   Title 21 of the United States Code, Section 841

15   (a) (1) and (b) (1) (a).    That carries a maximum

16   sentence of lifetime imprisonment with a mandatory

17   minimum term imprisonment of ten years.

18                   A fine of $4 million.    Lifetime

19   supervised release with a mandatory minimum term

20   of supervised release of five years and a $100

21   special assessment.

22                   Count Four charges you with

23   possession of a firearm after conviction of a

24   felony in violation of Title 18 of the United

1    States Code, Section 922 (g) (1).  That carries a

2    maximum sentence of a term of imprisonment of ten

3    years.  A fine of $250,000.  Three years of

4    supervised release and $100 special assessment.

5              In paragraph two it indicates that

6    at the time of sentencing the United States agreed

7    to move to dismiss the remaining counts of the

8    indictment.  In paragraph three it goes over the

9    essential elements of each offense and I'll go

10   over those a little bit later.

11             I do want to note that it indicates

12   Count One and Count Three.  So I assume that is a

13   typo, it should be Count Four?

14             MS. PARK:   That's correct, Your

15   Honor.

16             THE COURT:  Let me just correct

17   that.  I have corrected that in paragraph three.

18   In paragraph four it indicates that you admit the

19   following facts:  That on or about February 17,

20   2005, the police recovered among other things 362

21   grams of cocaine base or crack cocaine.  And a

22   Smith and Wesson model 629-3 44 caliber handgun.

23   Serial number BNN4019 from your car, a Mazda

24   Millenia with temporary Pennsylvania registration

1   number 0827-920. Which was parked in the driveway
2   of your residence in New Castle Delaware.
3              It indicates that you knew that
4   there was cocaine base, in other words, crack
5   cocaine in your car. That you had dominion and
6   control over this cocaine base also known as crack
7   cocaine. And that you intended to distribute this
8   cocaine base.
9              That you further knew that the Smith
10  and Wesson 44 caliber firearm was in your car and
11  you had dominion and control over this firearm.
12  It indicates that you had been convicted of a
13  robbery in the second degree felony crime
14  punishable by imprisonment for a term exceeding
15  one year in the State Superior Court in April of
16  2001. And were convicted of assault in the second
17  degree, a felony crime punishable by a prison term
18  exceeding one year in the State Superior Court in
19  October of 1997.
20             It also indicates that you
21  acknowledge that the Smith and Wesson 44 caliber
22  firearm was manufactured outside the State of
23  Delaware. In paragraph five it indicates that you
24  have abandoned any right, title and interest that

1  you may have in the Smith and Wesson 44 caliber

2  handgun.  It having been seized by the Delaware

3  State Police in February 2005.  And that you have

4  agreed to execute all documents request by the

5  Government to effect this abandonment.

6           And you have agreed that the

7  Delaware State Police and or the Bureau of Alcohol

8  Tobacco and Firearm and Explosives my dispose of

9  this firearm in whatever manner they deem

10 appropriate.

11           In paragraph six you have also

12 agreed to forfeit all interests in any drug

13 related asset that you currently own, and

14 previously owned or over which you currently or in

15 the past exercised control directly or indirectly

16 in any property you have transferred as well as

17 any property that is traceable to derived from,

18 fungible with or a substitute for property that

19 constitutes the proceeds of this offense, of these

20 offenses.

21           Including but not limited to the

22 following specific property:  A 1997 Cadillac

23 Seville with temporary Delaware registration

24 number XB-075529 with the VIN number of

1   1G6KS52Y5VU806681.  And the Smith and Wesson 44

2   caliber handgun.

3              And that you warrant that you are

4   the sole owner of the property that I have just

5   described.  And you have agreed to hold the United

6   States, its agents and employees harmless from any

7   claims whatsoever in connection with the seizure

8   of that property.

9              In paragraph seven you have agreed

10  to waive all interest and any such asset in any

11  administrative or judicial forfeiture proceeding,

12  whether criminal or civil, state or federal.

13              You have also agreed to waive all

14  constitutional statutory challenges in any manner

15  including direct appeal, habeas corpus or any

16  other means, to any forfeiture carried out in

17  accordance with this plea agreement on any grounds

18  including that the forfeiture constitutes an

19  excessive fine or punishment.

20              I'm up to paragraph nine at this

21  point.  And it indicates that provided that the

22  United States does to subsequently learn of

23  conduct that is inconsistent with the acceptance

24  of responsibility, the United States agrees to the

1   two level reduction under the sentencing guideline

2   calculations for your acceptance of

3   responsibility.

4              And if your offense level is

5   determined to be level 16 or greater, the United

6   States agrees to an additional 1 level for a total

7   of three points for your acceptance of

8   responsibility.

9              In paragraph ten the United States

10  further agrees to recommend a sentence that is at

11  the bottom end of the guideline range.

12             In paragraph eleven it indicates

13  that you understand in sentencing I have to

14  consider the United States Sentencing Guidelines

15  and take them into account in exercising my

16  discretion to determine the appropriate sentence.

17  And that I must consider other factors bearing on

18  the appropriate sentence as described in Title 18

19  of the United States Code, Section 3553 (a).

20             You also understand as stated above

21  that the Government will recommend that I impose a

22  sentence at the bottom end of the sentencing range

23  set forth by the sentencing guidelines.  But that

24  you recognize that I, the Court, the sentencing

1    judge, is not bound by any stipulations and

2    recommendations of the parties.

3                    And you understand that you will not

4    be able to withdraw your guilty plea because the

5    Court calculates the guidelines differently than

6    you expect or contrary to any stipulation of the

7    parties or recommendations of your attorney.

8                    Paragraph twelve it indicates that

9    you have agreed to pay the $200 special assessment

10   on the day of sentencing.  If you are unable to do

11   so then you will voluntarily enter the Inmate

12   Financial Responsibility Program.

13                   Paragraph 13 indicates that the

14   United States attorney reserves the right to

15   defend any ruling of the Court should there be an

16   appeal from this case.

17                   And finally the last paragraph

18   indicates that this written memorandum supersedes

19   all prior promises, representations, and

20   statements.  And that it can be modified only in

21   writing and signed by all the parties.

22                   So that is a brief summary of the

23   written memorandum of plea agreement.  My question

24   to you is whether this written agreement is an

1    accurate reflection of the agreement you had

2    reached with the Government?

3                    THE WITNESS:    Yes, ma'am.

4                    THE COURT:    And has anyone promised

5    you anything that is contained in the agreement?

6                    THE WITNESS:    No.

7                    THE COURT:    And has anyone

8    threatened you or forced you into entering this

9    agreement?

10                   THE WITNESS:    No.

11                   THE COURT:    Do you understand that

12   this is the time to tell me of any promises not of

13   record or of any threats made because you will not

14   be able to withdraw your plea of guilty at a later

15   time based on the information you could have

16   shared today.  Do you understand?

17                   THE WITNESS:    Yes.

18                   THE COURT:    Do you understand that

19   these offenses are a felony.  And that once you

20   are adjudged guilty of these felonies you may be

21   deprived of some valuable civil rights such as the

22   right to vote, the right to hold public office,

23   the right to serve on a jury and the right to

24   possess any kind of firearm.  Do you understand

1  those consequences?

2              THE WITNESS:   Yes.

3              THE COURT:  Do you understand that

4  because there are mandatory minimum terms of

5  imprisonment involved in your case that I do not

6  have the authority to give you a sentence less

7  than the mandatory minimum, unless the Government

8  files a motion.  Do you understand that?

9              THE WITNESS:   Yes.

10             THE COURT:   Do you understand that

11 once you have served a term of imprisonment and

12 are out on supervised release that if you violate

13 any of the terms of your supervised release that

14 could expose you to yet another term of

15 imprisonment.  Do you understand that?

16             THE WITNESS:   Yes.

17             THE COURT:  I take it because the

18 discussion and the written memorandum of plea

19 agreement that you and Ms. Kousoulis have talked

20 about how sentencing guidelines might apply to

21 your case?

22             THE WITNESS:   Yes.

23             THE COURT:  And do you understand

24 that until I review the presentence investigation

1   report I don't know how they will apply.  So I do

2   depend on the presentence investigation report for

3   my sentencing information.  Do you understand that

4   both you and the Government will have the

5   opportunity to challenge the facts contained in

6   that presentence investigation report?

7                   THE WITNESS:   Yes.

8                   THE COURT:  Do you understand that

9   after it has been determined what guideline

10  applies to a case that I will have the authority

11  in some circumstances to impose a sentence that is

12  higher than that called for by the guidelines.  Do

13  you understand that?

14                  THE WITNESS:   Yes.

15                  THE COURT:   And do you understand

16  that under some circumstances you and the

17  Government will have the right to appeal any

18  sentence that I impose.  Do you understand that

19  you have that right?

20                  THE WITNESS:   Yes.

21                  THE COURT:   And finally and most

22  importantly do you understand that if the sentence

23  I ultimately impose is harsher than you expected

24  that you will still be bound by your plea and will

1  not have the right to withdraw on that basis.  Do
2  you understand that?
3            THE WITNESS:   Yes.
4            THE COURT:   The next question is a
5  long one so bear with me.  Do you understand that
6  you have the right to plead not guilty to this
7  offense and that you would then have the right to
8  a trial by jury.  During which you also have the
9  right to the assistance of an attorney for your
10  defense.  The right to see and hear all the
11  witnesses and have them cross-examined in your
12  defense.
13            The right on your own part not to
14  testify unless you voluntarily elected to do so in
15  your defense.  And the right to compel the
16  attendance of witnesses to testify on your
17  behalf.  Do you understand that you have all of
18  those rights?
19            THE WITNESS:   Yes.
20            THE COURT:   And you understand that
21  you are entering a plea of guilty today and you
22  are waiving your right to a trial by jury as well
23  as all those other rights associated with the
24  trial by jury.  Do you understand that?

```
 1              THE WITNESS:    Yes.

 2              THE COURT:   Do you understand that

 3    if this case were to go to trial it would be the

 4    Government's burden to prove all of the essential

 5    elements of these offenses beyond a reasonable

 6    doubt to a jury.   That means that if there was a

 7    trial that the Government would have to prove the

 8    following elements beyond a reasonable doubt with

 9    respect to Count One of the indictment.

10              First that on or about February 17,

11    2005, he knowingly possessed 50 grams or more of

12    cocaine base, i.e., crack cocaine.   Second that

13    the substance was, in fact, cocaine base, i.e.,

14    crack cocaine.   And third that you intended to

15    distribute the cocaine base, i.e., crack cocaine.

16              With respect to Count Four of the

17    indictment the Government would have to prove the

18    following elements beyond a reasonable doubt:

19    First that on or about February 17, 2005, you

20    knowingly possessed a firearm.   Second that at the

21    time you had been previously convicted of a crime

22    punishable by imprisonment for a term exceeding

23    one year.   And third that the firearm affected

24    Interstate Commerce, that is that it had.
```

1    previously crossed state lines.

2                   So that is what the Government would

3    have to prove.  And I understand in paragraph four

4    of the memorandum of plea agreement you have in

5    writing admitted certain facts.  But I do need you

6    to tell me in your own words this morning why you

7    think you should be pleading guilty to these

8    offenses?

9                   MS. KOUSOULIS:   Can I just have one

10   second, Your Honor?

11                  THE COURT:  Yes.

12                  THE WITNESS:   Your Honor, you said

13   you want me to basically explain the situation?

14                  THE COURT:  What you did that makes

15   you think you should be pleading guilty to these

16   particular offenses.

17                  THE COURT:   On or about the said

18   date, I guess it was the 17th, I was knowingly in

19   possession -- the drugs were in my car that was in

20   my name.  Also that the gun was inside of the

21   car.

22                  THE COURT:  Did you know it was

23   crack cocaine?

24                  THE WITNESS:   Yes.

1          THE COURT:  And you are in agreement

2   with the amount of crack cocaine; are you in

3   agreement with the fact that you intended to

4   distribute it as well?

5          THE WITNESS:  Yes.

6          THE COURT:  Ms. Park, would you

7   please describe the facts that the Government

8   would be prepared to prove had the case gone to

9   trial?

10          MS. PARK:  Yes, Your Honor.  Had

11   this case gone to trial members of the Drug

12   Enforcement Administration would have testified

13   that on or about February 17, 2005, a confidential

14   source or (CS), made three tape recorded telephone

15   calls to the defendant, Joseph Pryer.

16          These calls were monitored by

17   members of the DEA, and in these calls the CS

18   ordered 14 grams or half-ounce of cocaine from the

19   defendant.  The defendant agreed to meet with and

20   deliver the cocaine to the CS between 5:20 and

21   5:30 p.m., at the Super Fresh Grocery Store

22   located in the Crossroads Shopping Center in New

23   Castle, Delaware.

24          At approximately 5:10 p.m., the DEA

1  established surveillance in and around the area of

2  the Super Fresh.   Members of the surveillance team

3  observed the defendant in a dark colored Cadillac

4  Seville which was parked in the Super Fresh

5  parking lot.

6              Defendant was a driver and sole

7  occupant of the car.  At approximately 5:20 p.m.,

8  members of the surveillance team observed the CS

9  approach the defendant who was seated in the

10  Cadillac.  At that time the defendant was placed

11  under arrest and the Cadillac was searched.

12  Inside the Cadillac was 13.4 grams of cocaine

13  hydrochloride inside a small box on the front

14  passenger seat of the vehicle.

15              After the defendant's arrest members

16  of the DEA discovered that the defendant was on

17  probation in the State of Delaware and notified

18  Delaware State Probation and Parole about the

19  defendant's arrest.  An administrative search of

20  the defendant's residence was approved by a

21  supervisory probation officer.  And later that

22  evening at about 9 p.m., an administrative search

23  was conducted of the defendant's residence which

24  he shares with his parents.

1          The defendant's mother showed the

2    officers to the defendant's bedroom.   Searched the

3    defendant's bedroom and uncovered the following

4    items: Two bricks of cocaine hydrochloride which

5    weighed 2001 grams.   A clear plastic bag

6    containing 41.5 grams of cocaine hydrochloride.   A

7    digital scale, a box of clear plastic sandwich

8    bags.   The defendant's wallet containing his

9    Delaware identification and various documents and

10   mail with the defendant's name on them.

11          The defendant's mother further

12   informed the officers that the Mazda Millenia

13   which was parked outside the residence belonged to

14   the defendant.   Computer check verified that the

15   vehicle was registered to the defendant.   The

16   Mazda Millenia was seized and towed to Troop 2.

17          The following day a supervisory

18   probation officer approved an administrative

19   search of the defendant's Mazda Millenia.   Inside

20   this vehicle the police uncovered the following

21   items: Three clear plastic bags containing 305

22   grams of cocaine hydrochloride.   Seven clear

23   plastic bags containing 362 grams of cocaine base,

24   that is crack cocaine.   Black plastic bag and ten

1    clear plastic bags containing 1225 grams of

2    marijuana.  And a loaded stolen Smith and Wesson

3    model 629-3 44 caliber handgun, serial number

4    BNN4019.

5                    The evidence will have further shown

6    that the defendant was convicted of robbery in the

7    second degree, felony crime, punishable by

8    imprisonment for a term exceeding one year, New

9    Castle County Superior Court on or about April 16,

10   2001.  An assault in the second degree, felony

11   crime punishable by imprisonment for a term

12   exceeding one year, New Castle County Court on or

13   about October 20, 1997.

14                   The evidence would have further

15   shown that the Smith and Wesson 44 caliber firearm

16   which was recovered from the defendant's car was

17   manufactured outside the State of Delaware.

18                   THE COURT:  All right.  Mr. Pryer,

19   do you strongly disagree with any of the

20   Government's factual representation?

21                   THE WITNESS:  No.

22                   THE COURT:  And how do you now plead

23   to the charges, guilty or not guilty?

24                   THE WITNESS:   Guilty.

1              THE COURT:    It is the finding of

2    the Court in United States versus Joseph M. Pryer,

3    that the defendant is fully competent and capable

4    of entering an informed plea.   That his plea of

5    guilty is a knowing and voluntary plea supported

6    by independent basis and facts contained each with

7    the essential elements of the offense.

8              His plea is, therefore, accepted and

9    he is now adjudged guilty of these offenses.   And

10   I have accepted the memorandum of plea agreement.

11   We will tentatively schedule sentencing for

12   October 4th at 4:30 p.m.

13              If either counsel has a conflict you

14   need to let my office know otherwise we will enter

15   the order today.   All right.   Are there any other

16   issues we need to address?

17              MS. PARK:   No, Your Honor.

18              MS. KOUSOULIS:   No, Your Honor.

19              THE COURT:   All right.   Thank you

20   very much.   We'll be in recess.

21                   *  *  *

22              (Court adjourned at 10:53 a.m.)

23                   *  *  *

24

```
 1   State of Delaware  )
                         )
 2   New Castle County  )
```

 3

 4                    CERTIFICATE OF REPORTER

 5          I, Karen McCloskey, Professional
     Reporter and Notary Public, do hereby certify that
 6   the foregoing record, is a true and accurate
     transcript of my stenographic notes taken on July
 7   7, 2005, in the above-captioned matter.

 8          IN WITNESS WHEREOF, I have hereunto set
     my hand and seal this 7th day of July, 2005, at
 9   Wilmington.

10                    _____

11                        Karen McCloskey
                          Cert. #183-PS
12

13

14

15

16

17

18

19

20

21

22

23

24

Hawkins Reporting Service
715 N. King Street, Suite 3 - Wilmington, DE 19801
(302) 658-6697    FAX (302) 658-8418

# EXHIBIT 5

1

1   IN THE UNITED STATES DISTRICT COURT

2   IN AND FOR THE DISTRICT OF DELAWARE

3   - - -

4   UNITED STATES OF AMERICA,        :       CRIMINAL ACTION
                                     :
5             Plaintiff              :
                                     :
6         vs.                        :
                                     :
7   JOSEPH M. PRYER,                 :
                                     :
8             Defendant              :       NO. 05-15 (SLR)

9   - - -

10                          Wilmington, Delaware
                            Thursday, January 19, 2006
11                          4:45 o'clock, p.m.

12   - - -

13   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

14   - - -

15   APPEARANCES:

16          RICHARD G. ANDREWS, ESQ.,
            Assistant United States Attorney
17
                   Counsel for Plaintiff
18

19          ELENI KOUSOULIS, ESQ.,
            Assistant Federal Public Defender
20
                   Counsel for Defendant
21

22

23

24                          Valerie J. Gunning
                            Official Court Reporter
25



1

2                    P R O C E E D I N G S

3             (Proceedings commenced in the courtroom,

4    beginning at 4:45 p.m.)

5

6             MR. ANDREWS:  Good afternoon, your Honor.  This

7    is the time the Court has set for sentencing in United States

8    versus Pryer, Criminal Action No. 05-15-SLR.  Joseph Pryer,

9    the defendant, and his attorney, Eleni Kousoulis, are present

10   in the courtroom.  At this time we'd move Mr. Pryer's

11   sentencing.

12            THE COURT:  All right.  Thank you.

13            As is my standard routine, you let me go through

14   the sentencing guideline calculations.

15            The defendant pled guilty to two counts.  The

16   first count was possession with the intent to distribute more

17   than 50 grams of cocaine base, a violation of Title 21 of the

18   United States Code, Section 841(a)(1).  The maximum penalties

19   that could be imposed by statute include life imprisonment, a

20   lifetime of supervised release and a $4 million fine.

21            The minimum term of imprisonment is ten years and

22   the minimum term of supervised release is five years.

23            He also pled guilty to Count 4, which involves

24   possession of a firearm by a prohibited person, a violation

25   of Title 18 of the United States Code, Section 922(g)(1).

1    The maximum penalties that could be imposed by statute
2    include ten years imprisonment followed by three years of
3    supervised release and a $250,000 fine.  A special assessment
4    of $100 is applicable to each count of conviction.

5              The sentencing guideline calculations, although
6    there are kind of different iterations, come down to the fact
7    that there's a base offense level of, or an adjusted offense
8    level of 36 for Count 1, possession with the intent to
9    distribute crack cocaine base based on the quantity of the
10   drugs and based on the fact that a gun was involved.

11             There's also, looking at Chapter 4 enhancements,
12   there's also the fact that he's deemed a career offender
13   because the instant offense is a drug trafficking offense and
14   he has two prior convictions for offenses which are either
15   drug trafficking or violent offenses, and that would give him
16   an adjusted offense level of a 37.

17             I believe, when all is said and done, that under
18   the guidelines, we take the higher of these.  We take away
19   three points for the defendant's acceptance of responsibility
20   and that give gives us what I think is our final and total
21   level, which I think is a 34, as I understand it.

22             With respect to the defendant's criminal history,
23   because he is deemed a career offender under the sentencing
24   guidelines, he is assigned a criminal history category of
25   Roman Numeral VI.

4

1            And with a total offense level of 34 and a

2    criminal history category of Roman Numeral VI, the guidelines

3    would call for a period of incarceration of from 262 to

4    327 months, followed by supervised release of five years

5    on Count 1 and two to three years on Count 4, a fine in the

6    amount of $17,500 to $4 million, and a special assessment of

7    $200.

8            My first question is whether the defendant,

9    Mr. Pryer -- did you have an opportunity to review the

10   presentence investigation report with your attorney,

11   Ms. Kousoulis?

12            THE DEFENDANT:  Yes, I did.

13            THE COURT:  All right.  And I believe that there

14   have been two objections filed by the defendant.  One is a

15   standard objection about the collection of DNA.  That

16   standard objection is overruled based on the Third Circuit's

17   holding in Skubelek.

18            The second had to do with Paragraph 86.  It

19   certainly -- well, so I guess, Ms. Kousoulis, I don't know

20   what you want to do with that objection, but if you'd like to

21   let me know what your fear is in connection with including

22   that information, I would appreciate hearing it.

23            MS. KOUSOULIS:  Well, your Honor, my main

24   objection is the fact that it doesn't paint Mr. Pryer in

25   particularly good light, and these are allegations, they were

1   never proven.  In fact, that case was dismissed.

2              And so my fear is that if the Court were to take

3   anything in that paragraph into account when determining Mr.

4   Pryer's character and his background, in terms of assessing

5   what sentence is appropriate, that would implicate Mr.

6   Pryer.  In that case, we would have fought.  He denied the

7   allegation, denied the situation happened as was stated in

8   that paragraph.  But because that case was being dismissed,

9   he was never called upon to fight the allegations or to do

10  anything with those.

11             So for that reason, your Honor, given the fact

12  that it's unrelated, those allegations in that case that were

13  dismissed was unrelated to the case that he ultimately pled

14  guilty to.  So it wasn't like it was part and parcel of

15  another case.  They were two entirely separate instances, so

16  I didn't see how it was relevant since it had been dismissed,

17  he had never pled guilty to it, those allegations were never

18  proven.  Given the type of allegations they were, I just

19  didn't think it was appropriate to include it.

20             THE COURT:  All right.

21             MS. KOUSOULIS:  Your Honor, while we're

22  on -- I got a revised copy of the presentence report

23  yesterday.  With regard to Paragraph 89, there were additions

24  made that I saw for the first time yesterday and had an

25  opportunity to discuss with Mr. Pryer for the first time

1    yesterday afternoon and with his family today in court.

2            And his sister, Amanda, has indicated by -- when

3    I spoke to her about the things she had said to the

4    presentence reporter, she said they were taken a little bit

5    out of context and she wanted that clarified.

6            With regard to the last five lines of Paragraph

7    89, she indicated that while she did mention to the

8    presentence reporter that Mr. Pryer was looking for money, it

9    was in the context of that he was helping to support his four

10   children and himself.  And when she talked about people

11   wanting to be accustomed to fast living and fast money, she

12   was talking about drug dealers in general.  Those comments

13   weren't necessarily a characterization of her brother and she

14   just wanted that clarified because I think it was

15   mischaracterized in the presentence report.

16            THE COURT:  All right.

17            MS. KOUSOULIS:  And she's here if the Court or

18   Mr. Andrews would like to question her about that.

19            THE COURT:  Mr. Andrews, anything you'd like to

20   state?

21            MR. ANDREWS:  Your Honor, as far as the second

22   objection goes, I don't want to ask the defendant's sister

23   any questions and I don't think -- I think the Court can

24   accept what Ms. Kousoulis has said and we can move on.

25            With regards to Paragraph 86, I believe that the

1   facts that are in there, I'm not in a very good position to
2   prove that they are true.  I assume Mr. Matthews probably has
3   a police report that contains them, but they are things that
4   occurred eight or nine years ago, and they weren't resolved
5   by a guilty plea or a conviction.

6           In addition, and I understand they're not in the
7   report by what Mr. Matthews says in the supplement in order
8   to suggest that the Court should give Mr. Pryer more or less
9   time in jail than the Court otherwise would.

10          Mr. Matthews says that they might help on
11  conditions, perhaps on supervised release or while in prison
12  it might aid the defendant.

13          My concern would be Rule 32(i)(3)(b), which
14  basically says, unless the Court is going to adjudicate a
15  dispute over a particular disputed factor, the Court can't
16  take it into account in any way, including, I think, doing
17  things that perhaps are supposed to help the defendant.  At
18  least that would be my interpretation.

19          So my suggestion is, because -- and to the extent
20  that the concern is the presentence officer wanted the Court
21  to be aware about a domestic violence history relating to the
22  defendant, that's in Paragraph 57, in the description of the
23  assault on his girlfriend, which is not quite as extensive as
24  what is in Paragraph 86, but it's to the same effect.

25          So whatever programs or whatever else that

8

1    either the Court or the prison might think are appropriate

2    for Mr. Pryer, I think they can do on the basis of either you

3    or they can do on the basis of what's in paragraph 57.

4              So my recommendation would be that the Court, as

5    far as Paragraph 86 goes, not resolve the question of what

6    happened there and state, and not rely on it for any part of

7    the sentence.

8              THE COURT: All right. And I will accept Mr.

9    Andrews' recommendation.

10             All right. I guess we have resolved those, then,

11   and I will ask the Government if the Government, Mr. Andrews,

12   does the Government have any recommendations as to an

13   appropriate sentence?

14             MR. ANDREWS: Your Honor, the sentencing

15   guideline range, as the Court well knows, is advisory. It's

16   also very lengthy, but in this particular case, as in I guess

17   most cases, it's lengthy for a reason, and the amount of

18   drugs that the defendant had in his possession when he was

19   arrested, I'm trying -- I've been trying to think when is the

20   last time I saw a defendant arrested in Delaware, not a

21   courier just passing through actually have that much drugs

22   in his possession. Nearly two and a half kilograms of

23   cocaine, 360 grams of crack cocaine. He also had a loaded

24   stolen .44 caliber handgun.

25             He was seriously involved in the drug trade, and

1    so in terms of the Court's sentence, the depth of his

2    involvement, I think, calls for a severe sentence, and, of

3    course, the guidelines, I think, provide for that.

4              The second thing is that the defendant presents a

5    very unpromising picture of someone who has much prospects of

6    conforming himself to the law when he's out of prison,

7    whenever that might be.

8              I think he's 28 years old, has 15 prior

9    convictions.  Four of them were drugs, three of them for

10   violent crimes.  He has been in jail six of the last eight

11   years.  He has five violations of probation when he's out.

12             He's deserving of a very -- of a very severe

13   sentence and I would ask the Court to sentence him

14   accordingly.

15             THE COURT:  All right.  Thank you.

16             All right.  If the defendant and his counsel

17   would come forward.

18             Ms. Kousoulis?

19             MS. KOUSOULIS:  Good afternoon, your Honor.

20             Your Honor, understanding that the guidelines do

21   call for a sentence of 262 to 327 months, we would just

22   remind the Court that the guidelines are advisory.  In fact,

23   there's nothing in Booker, any of the case law, that

24   indicates the guidelines are necessarily even a starting

25   point for consideration when considering what sentence is

1    reasonable.  And in this case, your Honor, reasonableness

2    being the standard, we would indicate, as indicated in the

3    comments I made to the Court, that a sentence of 15 years is

4    reasonable.  Fifteen years is a significant sentence.  It's

5    not as long as 262 to 327 months, which I believe is 22 to 27

6    years, but it is a significant sentence.  And we believe that

7    the 15 years would comply with the goals and purposes of

8    sentencing.

9         If Mr. Pryer is sentenced to 15 years, he'll be

10    in his forties when he is released, and I would submit that

11    although he may not have been an exemplary model citizen the

12    past few years, when he's 40 years old, I would submit that

13    he's going to be a different person than he was in his teens

14    and twenties.  That's a long time for him to sit and think,

15    and he spent the last year in jail.

16         I've spoken to his family members who have

17    written to him and spoke to him on the phone and they've

18    noticed a change in him this time more so than other times

19    when he has been incarcerated.

20         I think the fact that he's facing so much time

21    has really made him think about his life and what he wants it

22    to look like and think about being away from his kids for as

23    long as he's going to be away from his four children, and I

24    think this time is different.  And I know that defendants

25    come in front of your Honor and say that, and I'm sure the

1    Government would argue that's what we always here, but,

2    your Honor, in speaking to his family, I believe that, and to

3    Mr. Pryer, that he's sincere in his commitment to change his

4    life.

5              When he's released from jail, his children will

6    basically be adults.  They'll be all grown up.  I would

7    submit a sentence 15 years will serve to punish the defendant

8    because it will serve to punish him because he'll spend 15

9    years away from his family, away from his children, knowing

10   that his children are growing up without a father.

11             In addition, your Honor, I believe a sentence of

12   15 years will also serve the rehabilitation aspect of

13   sentencing.  Mr. Pryer understands he has a problem with his

14   anger and a problem with drugs, and he plans -- first of all,

15   the recognition of this I think is a first step towards

16   rehabilitation.  He plans on taking advantage of whatever

17   programs the prison has to offer with regard to drug

18   treatment and with regard to anger management.

19             In addition, your Honor, from the beginning,

20   Mr. Pryer pled guilty in this case.  He accepts the

21   responsibility, and that, again, your Honor, is the first --

22   is another step for rehabilitation.

23             Mr. Pryer also throughout this process has not

24   blamed anyone but himself for the situation he finds himself

25   in now.  And, your Honor, he understands that he needs to be

12

1   punished for his crime, but we would submit that 15 years is

2   punishment, does serve the goals of sentencing, and will

3   allow Mr. Pryer to be punished for his crimes, but allow him

4   to be released from prison at an age where he can still be a

5   contributing member to society and still be an active part of

6   his children's lives. And for those reasons, your Honor, we

7   believe that a sentence at 15 years is reasonable.

8           I would also point out that he has family

9   support. Even given the fact that he's facing so much time,

10  his family has remained supportive of him.

11          In the courtroom today is his mother, Shirley

12  Cole, his son, Nasier Truitt, his sisters, Anisa Abdullah and

13  Amanda McKinney, and a friend of the family, Luther Truitt.

14  They've all been very supportive. I believe, your Honor, I

15  submitted a letter from Harriet Truitt, who could not be here

16  today but wanted to show her support of Mr. Pryer.

17          I spoke to Vanetta Baker, who was the victim in a

18  couple of Mr. Pryer's prior offenses. She's the mother of

19  two of his children, one of his children, and she indicated

20  to me that she has spoken to Mr. Pryer and Mr. Pryer's

21  daughter has spoken to him on the phone and she has noticed a

22  change in him. She thinks a lot of this has to do with the

23  fact he has been off drugs all year. When he's off drugs,

24  he's more involved with his children's lives and a better

25  person when he's not doing drugs.

1    If you look at his record, he has possession
2  cases, he has anger cases, which I think are contributable to
3  his problems with drugs and alcohol. And once he gets that
4  under control, I think he will be less of a threat to society
5  and less of a threat to himself. And I believe 15 years will
6  give him the opportunity, more than enough time to address
7  those concerns and come out a different person than when he
8  went in.

9    And, your Honor, his sister, Anisa Abdullah, did
10  ask if she could address the Court.

11    THE COURT:  All right.

12    MS. KOUSOULIS:  Ms. Abdullah?

13    I wrote down the spelling of the names for the
14  Court Reporter.

15    Just identify yourself.

16    ANISA ABDULLAH:  My name is Anisa Abdullah.  I'm
17  the sister Shahid Abdullah.

18    MS. KOUSOULIS:  Also known as Joseph Pryer.

19    MS. ABDULLAH:  Yes.  Also known as Joseph Pryer.

20    What I basically want to just state was my
21  brother, he's not a bad person. Everyone makes mistakes
22  through their lives, and I don't think all the things that he
23  has done in his youth, maybe up to 22, 23, should be
24  accounted for for his sentence today.

25    From the first time that he entered jail, I can

1   personally say myself that he's a changed person because he's

2   changed me.  We were both knuckleheads and now we're not.

3            Sometimes people make decisions that are wrong

4   and have to go through the consequences.  I'm not denying

5   that he should not be punished, but I just feel like 30 years

6   is a long time.  Basically, I just think the 15 years and the

7   time that he has done now being away from his children,

8   because basically that's what this is really all about.

9            My brother gets threatened when his children are

10  not being looked after.  I guess as to anyone else, but as to

11  say as far as doing whatever he's done for, you know, his --

12  selfish for himself, I can't honestly say that those were the

13  causes and I can honestly say for some of the things was to

14  help me and my children.  And I just don't think that him

15  trying to be a good person, to help me, help his kids, and my

16  mother, he has to take the blame and take the fall for

17  everybody.

18           And with that being said, I just really think

19  that 15 years is enough.

20           THE COURT:  All right.  Thank you.

21           MS. KOUSOULIS:  And, your Honor, our only other

22  recommendation would be Mr. Pryer's grandmother is ill and we

23  would just request that a recommendation be made that he be

24  able to serve whatever sentence close to Delaware.

25           He understands -- I explained to Mr. Pryer that

1    it's just a recommendation and that even with the

2    recommendation, that it's still up to the Bureau of Prisons

3    to determine where he's going to be housed.

4            So Mr. Pryer does understand that a

5    recommendation doesn't guarantee that he's housed close to

6    home, but he wanted to make that request.

7            THE COURT:  All right.  Thank you.

8            MS. KOUSOULIS:  And I don't believe that Mr.

9    Pryer wants to address the Court.

10           Do you?

11           THE DEFENDANT:  No.

12           MS. KOUSOULIS:  He does not wish to.

13           THE COURT:  All right.  Ms. Kousoulis was correct

14   in that I hear the same laments from defendants virtually

15   every time they come to this part of the proceeding, and that

16   is that this time it's different, and that they really are

17   changed people, and that all their mistakes, they won't be

18   repeated.

19           It's amazing to me to look at a 27-year-old,

20   28-year-old man who has brought four children into the world

21   and has squandered his opportunity to see them grow up and

22   invest himself in them because selling drugs is such an easy

23   way to make money.

24           And Mr. Andrews is right.  It's unusual to have

25   this quantity of drugs from anybody.  This is a huge quantity

1  of drugs for Delaware, and so it's not just a personal

2  mistake he has made.  He has poisoned the community in which

3  his children were going to grow up, so that's a double

4  damnation in terms of what he thought was correct or not.

5           Fifteen years is not enough.  I don't know where

6  you draw the line, what's enough, what's not enough.  I don't

7  know what's enough for Mr. Pryer to get the message that we

8  will not condone this kind of behavior, and if his family is

9  hurt by the Court's decision, I apologize for that.  I truly

10  do feel for children and I don't understand the

11  irresponsibility, quite frankly.

12           On the other hand, I don't know whether the

13  sentencing guidelines have it right either.  21 years, 25

14  years, 30 years.  It's all a guessing game.  If you don't use

15  the guidelines, what do you use?

16           This defendant has not provided me with any

17  really heartfelt indications, either by words or deeds,

18  that he is, in fact, a changed person, but I am not

19  heartless.  I know that his family doesn't want him coming

20  out at age 50.

21           So, as is not unusual for me, I'm going to draw

22  the line somewhere down the middle.  So we're going to send

23  him to jail for 18 years, which is more than 15 and less than

24  the guidelines, because I believe that certainly if he hasn't

25  learned his lesson in 18, he's not going to learn his lesson

1    in 21 or 25.

2        Therefore, under the Sentencing Guidelines,

3    pursuant to the Sentencing Reform Act of 1984, it is the

4    judgment of the Court that the defendant, Joseph M. Pryer, is

5    hereby committed to the custody of the Bureau of Prisons to

6    be imprisoned for a term of, I believe it's 200 -- let me

7    make sure I have the right number:   216 months.

8        This term consists of 216 months for Count 1 and

9    a term of 120 months for Count 4, those terms to be served

10   concurrently.   This sentence imposed is below the guideline

11   range.   However, the Court finds that this term of

12   imprisonment is reasonable under the circumstances and will

13   meet the goals of Title 18 of the United States Code, Section

14   3553(a).

15        Upon release from imprisonment, the defendant

16   shall be placed on supervised release for a term of five

17   years.

18        This term consists of a term of 60 months for

19   Count 1 and a term of 36 for Count 4, to be served

20   concurrently.

21        Within 72 hours of release from the custody of

22   the Bureau of Prisons, he shall report in person to the

23   Probation Office in the district to which he's released.

24        While on supervised release, he shall not commit

25   another federal, state or local crime, shall comply with the

1   standard conditions that have been adopted by this Court, and

2   shall comply with the following additional conditions.

3           He shall not illegally possess a controlled

4   substance.  He shall not possess a firearm or destructive

5   device and he shall cooperate in the collection of DNA as

6   directed by the probation officer.

7           In addition, he shall comply with the following

8   special conditions.  He shall participate in a drug aftercare

9   treatment program at the direction of the probation officer,

10  which may include testing.  He shall participate in a mental

11  health treatment program, which may include counseling or

12  anger management, at the direction of the proceed probation

13  officer.  He shall also pay to the United States the special

14  assessment of $200, which is mandatory and which shall be due

15  immediately.

16          The Court finds that he does not have the ability

17  to pay a fine and will waive the fine in this case.

18          Mr. Pryer, you're going to be on supervised

19  release for a long time.  For your family's sake, I hope you

20  have learned your lesson so that once you get out, you don't

21  find yourself violating the terms of supervised release and

22  ending up right back in jail.

23          So you have ten days from the date judgment is

24  entered to appeal this case.  We will make the recommendation

25  for incarceration as close to Delaware as the Bureau of

19

1  Prisons can accommodate.

2           Mr. Andrews, is there anything else?

3           MR. ANDREWS:  Your Honor, just the motion and

4  order to dismiss the remaining three counts of the indictment

5  pursuant to the plea agreement.

6           THE COURT:  All right.  I will certainly sign

7  that.

8           Ms. Kousoulis, anything else?

9           MS. KOUSOULIS:  No, your Honor.

10          THE COURT:  All right.

11          (Court recessed at 5:15 p.m.)

12                    - - -

13

14

15

16

17

18

19

20

21      I hereby certify that the foregoing is a true
        and accurate transcript from my stenographic
22      notes in the proceeding.

23      _Valerie J. Gunning_
                Official Court Reporter
24              U. S. District Court

25

# EXHIBIT 6

# AFFIDAVIT OF ELENI KOUSOULIS, ESQUIRE

1. Your affiant represented the petitioner, Joseph Pryer, in the underlying criminal matter, *United States v. Joseph Pryer*, Crim. Act. No. 05-15-SLR.

2. Your affiant has no recollection or record that the defendant expressly directed her to file a direct appeal, and if he had so advised her, she would have told him that there are no meritorious appealable issues.

3. Your affiant did advise defendant prior to the change of plea hearing that a guilty plea would foreclose an appeal of issues relating to his guilt or innocence.

4. Your affiant's normal practice is to advise the defendant prior to sentencing that there is normally no valid basis for appeal of the sentence when the sentence imposed is well-below the range recommended by the United States Sentencing Guidelines, as here, absent a good reason for doing so.

5. Your affiant recalls discussing that a request for ten year sentence in this case was not reasonable, and advised him that the best he could hope for is a fifteen year sentence.

I declare under penalty of perjury that the foregoing is true and correct.

*Eleni Kousoulis*
Eleni Kousoulis, Esquire

Executed this 17th day of May, 2007.